Slip Op. 14 - 114

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CERAMARK TECHNOLOGY, INC. <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SGL CARBON LLC and SUPERIOR GRAPHITE CO., <br><br> Defendant-Intervenors. | Before: Donald C. Pogue, Senior Judge <br><br> Court No. 13-00357 |

OPINION
[final determination of circumvention affirmed in part and remanded in part]

Dated: September 24, 2014

     Brian W. Stolarz and Katherine A. Calogero, Jackson Kelly PLLC, of Washington, DC, for the Plaintiff.

     Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant. Also on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel was Jessica M. Forton, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

     Mary T. Staley and Katherine E. Wang, Kelley Drye & Warren LLP, of Washington, DC, for the Defendant-Intervenors.

     **Pogue, Senior Judge**: In this action, Plaintiff, Ceramark Technology, Inc. ("Ceramark") challenges the affirmative final determination of circumvention of an

antidumping duty order.[1] Compl., ECF No. 9 at ¶2.  In that determination, the Department of Commerce ("Commerce") found that 17 inch diameter graphite electrodes (which Ceramark imports) constitute merchandise altered in form or appearance in such minor respects that it was properly subject to the antidumping duty order for graphite electrodes 16 inches or smaller in diameter.[2].  Plaintiff claims that Commerce's determination is neither in accordance with law nor supported by substantial evidence. Rule 56.2 Mot. for J. on the Agency R. on behalf of Pl. Ceramark Tech., Inc., ECF No. 25 ("Rule 56.2 Mot.").

       Plaintiff is correct in part: Because Commerce failed to base its determination on a reasonable reading of the record evidence in context, its determination is not supported by substantial evidence.  The court remands for further consideration in accordance with this opinion.

---

[1] Small Diameter Graphite Electrodes From the People's Republic of China, 78 Fed. Reg. 56,864 (Dep't Commerce Sept. 16, 2013) (affirmative final determination of circumvention of the antidumping duty order and rescission of later-developed merchandise anticircumvention inquiry) ("Circumvention Final Determination") and accompanying Issues & Decision Memorandum, A-570-929 (Sept. 10, 2013) ("I&D Mem.").

[2] Circumvention Final Determination, 78 Fed. Reg. at 56,865. See Small Diameter Graphite Electrodes from the People's Republic of China, 74 Fed. Reg. 8775 (Dep't Commerce Feb. 26, 2009) (antidumping duty order) ("AD Order").

## BACKGROUND

I. <u>Antidumping Duty Determination and Order</u>

This action derives from a petition by SGL Carbon LLC and Superior Graphite Co. ("Petitioners" or "Defendant-Intervenors") alleging that imports of small diameter graphite electrodes ("SDGE") from the People's Republic of China ("PRC" or "China") were being dumped in the United States. <u>[SDGE] from the [PRC]</u>, 73 Fed. Reg. 8287 (Dep't Commerce Feb. 13, 2008) (initiation of antidumping duty investigation) ("<u>AD Initiation Notice</u>").

Commerce, having conferred with Defendant-Intervenors to ensure an accurate scope definition reflective of the domestic industry's concerns, limited its investigation to "all [SDGE] of any length, whether or not finished, of a kind used in furnaces, with a nominal or actual diameter of 400 millimeters (16 inches) or less, and whether or not attached to a graphite pin joining system or any other type of joining system or hardware." <u>Id.</u> at 8287.[3]  Commerce made a final affirmative determination of sales at less than fair value based on this scope definition. <u>[SDGE] from the [PRC]</u>, 74 Fed. Reg. 2049, 2050 (Dep't Commerce Jan. 14, 2009) (final determination of sales at

---

[3] <u>See also</u> Def.'s Resp. to Pl.'s Mot. for J. on the Admin. R., ECF No. 38 ("Def.'s Resp.") at 2 (noting that Petitioners and subsequently Commerce defined the desired scope of the investigation in this way).

less than fair value and affirmative determination of critical circumstances) ("AD Final Determination"). The International Trade Commission ("ITC") similarly made a final affirmative determination of material injury to U.S. industry within this scope definition. [SDGE] from China, USITC Pub. 4062, Inv. No. 731-TA-1143 (Feb. 2009) ("ITC Final Determination") at 6, 9-10.[4] Drawing on the arguments of the domestic industry, the ITC found "a clear dividing line between [small diameter and large diameter graphite electrodes]," and defined the threatened domestic product as "coextensive with the scope" of Commerce's antidumping duty determination. Id. at 10.

Based on the final affirmative determinations of Commerce and the ITC, Commerce issued an antidumping duty order on SDGE from the PRC. AD Order, 74 Fed. Reg. at 8775. Commerce again used the same scope definition, with the dividing line between small and large diameter graphite electrodes explicitly and unambiguously specified at 16 inches. Id.

II. Circumvention Investigation and Determination

Several years later, at the request of Defendant-Intervenors, Commerce investigated whether imports of graphite

---

[4] The ITC notes that, again, Petitioners argued that the ITC "should find one like product consisting of SDGE, coextensive with Commerce's scope. They stress that there are pronounced differences between SDGE and [large diameter graphite electrodes]." Id. at 6.

electrodes larger than 16 inches but smaller than 18 inches in diameter were being used to circumvent the antidumping duty order on SDGE. [SDGE] from the [PRC], 77 Fed. Reg. 37,873 (Dep't Commerce June 25, 2012) (initiation of anticircumvention inquiry) ("Circumvention Initiation Notice").[5] Commerce issued

---

[5] Defendant-Intervenors challenged pursuant to §§ 781(c)-(d) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677j(c) (2012) (the minor alterations provision) and 19 U.S.C. § 1677j(d) (2012) (the later developed merchandise provision). (All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition, unless otherwise noted.) The merchandise subject to the inquiry were graphite electrodes from the PRC produced and/or exported by Sinosteel Jilin Carbon Co., Ltd. and Jilin Carbon Import and Export Company ("Jilin Carbon" collectively), Beijing Fangda Carbon-Tech Co., Ltd. and Fangda Carbon New Material Co., Ltd.("Fangda Carbon" collectively), and Fushun Jinly Petrochemical Carbon ("Fushun Jinly"), with diameters larger than 16 inches but smaller than 18 inches and otherwise meeting the definition of the scope of the antidumping duty order. See Circumvention Initiation Notice, 77 Fed. Reg. at 37,874 n.7, 37,875-76. Commerce sent questionnaires to the above companies, along with all companies identified in the Comprehensive Service List for Scope Inquiries and the Government of the PRC. [SDGE] from the [PRC], Preliminary Analysis Mem., A-570-929 circumvention Inquiry (Apr. 11, 2013) (adopted in 78 Fed. Reg. 22,843 (Dep't Commerce Apr. 17, 2013) (affirmative preliminary determination of circumvention of the antidumping duty order and intent to rescind later-developed merchandise circumvention inquiry) ("Circumvention Prelim. Determination")) reproduced in App. to Def.'s Resp., ECF No. 44 at Tab 6 ("Circumvention Prelim. Mem.") at 2. Fangda Carbon and Fushun Jinly responded that neither they nor their affiliates produced or sold graphite electrodes matching the anticircumvention description. Id. Jilin Carbon responded that it produced and exported graphite electrodes with 17 inch diameters. See Id. at 2-3. Plaintiff, Ceramark, identified itself as an importer of those electrodes. Id. at 3. No one else responded. Id. at 2. Commerce accordingly limited the application of its affirmative determination to 17 inch diameter graphite electrodes produced and/or exported by Jilin
(footnote continued)

an affirmative determination of circumvention, finding that 17 inch graphite electrodes constituted a product altered in form or appearance in such minor respects that it should be included with the scope of the SDGE order pursuant to 19 U.S.C. § 1677j(c). <u>Circumvention Final Determination</u>, 78 Fed. Reg. at 56,864-65.[6] Plaintiff now challenges this determination. Rule 56.2 Mot., ECF No. 25; Mem. of Points & Authorities in Supp. of Pl.'s [Rule 56.2 Mot.], ECF No. 25-1 at 9.

### STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and will therefore uphold Commerce's final affirmative anticircumvention determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 477 (1951)

---

Carbon, as it had no record evidence of any other producer or product. <u>Id.</u> at 3-4; <u>Circumvention Prelim. Determination</u>, 78 Fed. Reg. at 22,844 (unchanged in <u>Circumvention Final Determination</u>, 78 Fed. Reg. at 56,865).

[6] Having found circumvention under 19 U.S.C. § 1677j(c), Commerce found it unnecessary to determine whether later developed merchandise was circumventing the SDGE antidumping duty order under 19 U.S.C. § 1677j(d). <u>Id.</u> at 56,865. Plaintiff does not contest Commerce's decision not to pursue Petitioner's 19 U.S.C. § 1677j(d) inquiry.

(quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence review requires consideration of "the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and asks, in light of that evidence, whether Commerce's determination was reasonable. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).[7]

## DISCUSSION

I.  Antidumping Duty Order Scope and Circumvention

In questions of scope, the language of the antidumping duty order is "the cornerstone of our analysis." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002). When the language is ambiguous in application, Commerce may interpret or clarify the order, 19 C.F.R. § 351.225(a),[8] and the

---

[7] See also Fuwei Films (Shandong) Co., Ltd. v. United States, __ CIT __, 837 F. Supp. 2d 1347, 1350 (2012) ("Fundamentally, though, 'substantial evidence' is best understood as a word formula connoting reasonableness review.") (citing 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d. ed. 2011).

[8] See also Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1382 (Fed. Cir. 2005) ("After investigation, Commerce will issue an antidumping order if merchandise has been sold at less than fair value. After an order is published, scope rulings may be necessary when producers . . . need clarification as to the status of their products under the order.").

court will grant "significant deference" to Commerce's interpretation. Duferco Steel, 296 F.3d at 1094-95 (citation omitted).  It follows that, when circumvention "seriously undermine[s] the effectiveness of the remedies provided" by the antidumping duty regime, S. Rep. No. 100-71, at 101 (1987) (legislative history of 19 U.S.C. § 1677j), Commerce may determine that a product in the penumbra of an order, outside the literal scope of its language, is covered by that order. 19 U.S.C. § 1677j.[9]  Nevertheless, Commerce cannot change the order or interpret it "in a way contrary to [its] terms." Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370 (Fed. Cir. 1998) (quoting Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).[10]

II.  Commerce's Minor Alteration Analytic Method

With a finding of circumvention, Commerce may include a product "altered in form or appearance in minor respects"

---

[9] Circumvention takes two forms, either a product's country of origin has been manipulated (merchandise completed or assembled in the United States and merchandise completed or assembled in other foreign countries), or the product itself has been manipulated (minor alteration of merchandise or later-developed merchandise). 19 U.S.C. §§ 1677j(a)-(d); 19 C.F.R. §§ 351.225(g)-(j).

[10] See also Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995) ("The Commerce Department enjoys substantial freedom to interpret and clarify its antidumping duty orders. But while it may interpret those orders, it may not change them.") (citation omitted).

within the scope of an antidumping duty order, 19 U.S.C. § 1677j(c), even if that product "might otherwise fall outside the literal scope of the order." Target Corp. v. United States, 609 F.3d 1352, 1362 (Fed. Cir. 2010) (emphasis omitted) (relying on Wheatland Tube, 161 F. 3d at 1371).[11]

The statute is silent with regard to what factors Commerce should consider when determining whether an alteration is minor. Commerce's practice is to analyze five factors[12] provided in the statute's legislative history (the Senate Report Criteria). Circumvention Prelim. Mem. at 5; I&D Mem. cmt. 1 at 10. Because the Senate Report Criteria may be insufficient for analysis of any given case,[13] Commerce will also consider additional context-specific criteria. Circumvention Prelim. Mem.

---

[11] See also Nippon Steel Corp. v. United States, 219 F.3d 1348, 1349 (Fed. Cir. 2000) (finding that a minor alteration inquiry is not ultra vires even when products are expressly and unambiguously excluded from an order).

[12] These five factors are: "[1] the overall physical characteristics of the merchandise, [2] the expectations of the ultimate users, [3] the use of the merchandise, [4] the channels of marketing[,] and [5] the cost of any modification relative to the total value of the imported product." S. Rep. No. 100-71, at 100; Circumvention Prelim. Mem. at 5. For the application of this test to the instant case, see Circumvention Prelim. Mem. at 8-16.

[13] The Senate Report indicates that the list is non-exhaustive. S. Rep. No. 100-71, at 100.

at 5.[14]  This approach is in keeping with the Senate's directive that Commerce "apply practical measurements regarding minor alterations, so that circumvention can be dealt with effectively," S. Rep. No. 100-71, at 100, and with "Commerce's duty to determine margins as accurately as possible, and to use the best information available to it in doing so." Lasko Metal Prods., Inc. v. United States, 43 F.3d 1442, 1443 (Fed. Cir. 1994).

As Commerce's choice of factors is based on the relevant statutory language and legislative history, its minor alterations analytic method cannot be per se unreasonable.[15] Rather, it is in accordance with law.

---

[14] Here, Commerce has considered: (1) the circumstances under which the products entered the United States; (2) the timing of entries; and (3) the quantity of merchandise entered. Circumvention Prelim. Mem. at 16.

[15] Because the statute does not "directly address the precise question at issue," the court is left to decide whether Commerce's choice of factors is based on "a reasonable construction of the statute." Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1377 (Fed. Cir. 2013) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)), and will consider "the express terms of the provision[] at issue, the objectives of [the] provision[], and the objectives of the antidumping scheme as a whole." Wheatland Tube Co. v. United States, 495 F. 3d 1355, 1361 (Fed. Cir. 2007) (quoting NSK Ltd. v. United States, 26 CIT 650, 654, 217 F. Supp. 2d 1291, 1297 (2002)).

III. Commerce's Minor Alteration Analytic Method in Application

While Commerce's analytic method is not per se unreasonable, circumvention is an inherently factual determination[16] and therefore must be supported by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).

In a minor alterations inquiry, whatever tests are derived and devised, whatever factors are considered, substantial evidence requires review of the record as a whole, including evidence contrary to Commerce's determination, and a finding that, given all the evidence, Commerce has still acted reasonably. Gallant Ocean, 602 F.3d at 1323; Nippon Steel, 458 F.3d at 1351. A minor alteration must be minor. It must be insignificant.[17] It cannot make the product materially different

---

[16] See Certain Cut-to-Length Carbon Steel Plate from the [PRC], 74 Fed. Reg. 33,991, 33,992 (Dep't Commerce July 14, 2009) (affirmative preliminary determination of circumvention of the antidumping duty order) ("Each circumvention case is highly dependent on the facts on the record, and must be analyzed in light of those specific facts."), unchanged in 74 Fed. Reg. 40,565, 40,566 (Dept. Commerce Aug. 12, 2009) (affirmative final determination of circumvention of the antidumping duty order).

[17] Commerce, in dismissing this requirement, would suggest that it is merely the Plaintiff's construction of the statute, see I&D Mem. at 10 ("[W]e disagree with Ceramark's construction of the statute (i.e., that the minor alteration must be 'insignificant').").  This is incorrect. It is the Federal Circuit's construction of the statute. See Wheatland Tube, 161 F.3d at 1371 ("In essence, section 1677j(c) includes within the scope of an antidumping duty order products that are so insignificantly changed from a covered product that they should be considered within the scope of the order even though the
(footnote continued)

from that specified in the order's scope. Wheatland Tube, 161 F.3d at 1371.  Otherwise, Commerce would be able to use circumvention to change an order or read it contrary to its terms, and the minor alteration inquiry would upend "the purpose of the antidumping laws" by "allow[ing] Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation." Wheatland Tube, 161 F. 3d at 1370-71.[18]  Commerce's "total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders [a determination] unsupported by substantial evidence." Allegheny Ludlum Corp. v. United States, 24 CIT 452, 479, 112 F. Supp. 2d 1141, 1165 (2000) (citations omitted).

      Here, Commerce has either ignored or dismissed record evidence that, on its face, indicates that the alteration at issue – a one inch increase in graphite electrode diameter – is neither minor nor an alteration.  Specifically: Commerce has not reasonably considered the prior commercial availability of the

---

alterations remove them from the order's literal scope.") (citations omitted).

[18] It would "also indirectly encourage manipulation of the antidumping duty process" by incentivizing petitioners to "narrowly define subject merchandise" to get a positive injury determination, and "later broaden an order's reach through use of a minor alteration inquiry.  Congress could not have intended this result." Deacero S.A. de C.V. v. United States, __ CIT __, 942 F. Supp. 2d 1321, 1332 n.6 (2013) ("Deacero I").

product.[19] See, e.g., Ceramark Initial Questionnaire Resp., A-570-929 Anticircumvention Inquiry (Aug. 3 2012), reproduced in Pub. App. to Mem. of Points of Authorities in Supp. of Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("Pub. App. to Rule 56.2 Mot."), ECF No. 28-2 at Tab 2, at 3 (citing Exs. 1 & 2 to id., respectively [Nat'l Elec. Mfrs. Ass'n ("NEMA")] Standards Publication Nos. CG 1-1993: Manufactured Graphite/ Carbon Elecrtrodes (Jan. 26, 1993) at 2, 8; NEMA Standards Publication No. CG 1-2001: Manufactured Graphite/ Carbon Elecrtrodes (2002) at 7); Jilin Carbon Initial Questionnaire Resp., A-570-929 Anticircumvention Inquiry (July 25, 2012) ("Jilin Resp."), reproduced in Pub. App. to Rule 56.2 Mot., ECF No. 28-5 at Tab 5, at 2, 8, 11-12 (citing same 1993 and 2001 NEMA standards); Ceramark's 1st Supp. Questionnaire Resp., A-570-929 Anticircumvention Inquiry (Oct. 17, 2012) ("Ceramark's Supp. Resp."), reproduced in Pub. App. to Rule 56.2 Mot., ECF No. 28-7

---

[19] Commerce declined to make finding as to whether 17 inch graphite electrodes were commercially available prior to the order. Instead, Commerce reasoned that the prior existence of a product "does not preclude the Department from conducting a minor alterations anticircumvention analysis," and therefore has "no relevance" to the minor alteration inquiry. I&D Mem. cmt. 1 at 11 (citation omitted).  The first is correct, but the second does not follow.  There is a difference between not precluding and having no relevance.  An alternate product is not necessarily the same as an altered product, see Hysla v. United States, 22 CIT 44, 48-49 (1998) (not reported in the Federal Supplement), and prior existence, while not dispositive, may help distinguish between the two.

at Tab 7, at 6-7.  Commerce also has not considered the importance of diameter as a defining characteristic of graphite electrodes.  See, e.g., Ceramark's Supp. Resp., ECF No. 28-7 at Tab 7, at 2-6; Jilin Resp., ECF No. 28-5 at Tab 5, at 8-13.  Moreover, Commerce has not considered the choice made by Defendant-Intervenors (the original petitioners in the antidumping duty investigation), its own corresponding choice, and the ITC's decision to explicitly and unambiguously exclude[20] 17 inch graphite electrodes from the SDGE antidumping duty

---

[20] Defendant-Intervenors argue that even when "the scope descriptor in question is a number," it "does not make a clear and unambiguous exclusion because Commerce has an appropriate practice of looking behind numeric descriptors to determine the meaning of the scope language." Resp. Br. of Def.-Intervenors SGL Carbon LLC & Superior Graphite Co., ECF No. 40 ("Def.-Intervenor Resp. Br.") at 31.  They cite Certain Pasta from Italy, 64 Fed. Reg. 43,152, 43,153 (Dept. Commerce Aug. 9, 1999) (notice of preliminary results and partial rescission of antidumping duty administrative review) in support.  Id.  In Certain Pasta from Italy, however, the scope of the order was broadened to accommodate "allowable industry tolerances," not, as here, differences in nominal diameter. Certain Pasta from Italy, 64 Fed. Reg. at 43,153. Cf. NEMA Standards Publication No. CG 1-2001: Manufactured Graphite/ Carbon Elecrtrodes (2002), reproduced in Pub. App. to Rule 56.2 Mot., ECF No. 28-2 at Tab 2 Ex. 2, at 2 (setting the range, the allowable industry tolerances, of 16-inch (400 mm) graphite electrodes at 409 to 403 mm – 17 inches (431.8 mm) is not within this range)); Int'l Electrotechnical Comm'n, International Standard: Graphite Electrodes for Electric Arc Furnaces – Dimensions and Designation (2005), reproduced in Pub. App. to Rule 56.2 Mot., ECF No. 28-6 at Tab 6 Attachment 1, at 17 (distinguishing the nominal diameter of 400 mm from the actual diameter specification range of 409 mm and 403 mm).

investigation, injury determination, and order.[21] See AD Initiation Notice, 73 Fed. Reg. at 8287; AD Final Determination, 74 Fed. Reg. at 2050; AD Order, 74 Fed. Reg. at 8775; ITC Final Determination, USCIT Pub. 4062 at 6, 9-10.[22]

Without having given due consideration to relevant evidence before it, Commerce has not based its decision on a reasonable reading of the record evidence.[23] Thus, Commerce's

---

[21] Commerce found that "the ITC's limitation of its injury analysis to [graphite electrodes] with diameters of 16 inches and below [did] not preclude [Commerce's] determination that the importation of Jilin Carbon's 17-inch [graphite electrodes] is circumventing [the order on SDGE from the PRC]." I&D Mem. cmt. 1 at 10. However, Commerce also notes that the question of whether 17 inch diameter graphite electrodes were injuring the domestic market was not before the ITC and the ITC had "no known data concerning domestically produced 17 inch electrodes before [it] in its injury investigation." Id. at 9 (quoting an explanatory memorandum from the ITC). Defendant-Intervenors claim that the domestic industry did not contemplate including 17-inch graphite electrodes at the time they drafted their petition "[b]ecause 16 inches was the upper limit of SDGE in the market." Def.-Intervenor Resp. Br. at 31. While petitioners and Commerce need not anticipate every possible modification — after all, scope and circumvention inquiries are available because "descriptions of subject merchandise contained in the Department's determinations must be written in general terms," 19 C.F.R. § 351.225(a) — Commerce still cannot interpret an order contrary to its terms. Wheatland Tube, 161 F. 3d at 1371. "[T]he minor alterations provision is not a vehicle for companies to expand an order in a way that petitioners avoided at the outset." Deacero S.A.P.I. de C.V. v. United States, Slip Op. 14-99, 2014 WL 4244349 at *4 (CIT Aug. 28, 2014) (citations omitted) ("Deacero II").

[22] Cf. Deacero I, __ CIT at __, 942 F. Supp. 2d at 1330-32; Deacero II, 2014 WL 4244349 at *3-7.

[23] The Defendant argues that consideration of additional factors "would usurp Commerce's discretion to interpret an ambiguous
(footnote continued)

failure to consider evidence that supports the possibility of an alternative conclusion has rendered its determination unsupported by substantial evidence.

## CONCLUSION

Accordingly, because Commerce failed to base its determination on a reasonable reading of the record, its determination is not supported by substantial evidence. The court remands for further consideration in accordance with this opinion. Commerce shall have until November 5, 2014 to complete and file its remand redetermination. Plaintiff shall have until November 19, 2014 to file comments. Defendant and Defendant-Intervenor shall have until December 1, 2014 to file any reply.

IT IS SO ORDERED.

/s/ Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: September 24, 2014
       New York, NY

---

portion of [19 U.S.C. § 1677j(c)]." Def.'s Resp. at 11. But this is not a question of factors. Rather, it is a question of facts. The court does not seek to impose its own "interpretation of how to best effectuate the overall statutory scheme on the record before it." Id. at 13. Rather, the court seeks to ensure that Commerce "examine the record and articulate a satisfactory explanation for its action." Yangzhou Bestpak Gifts, 716 F.3d at 1378 (citation omitted). Commerce may reasonably interpret an ambiguous statute; it may not fail to support its determinations with substantial evidence.