Slip Op. 15 - 40

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CERAMARK TECHNOLOGY, INC. | |
| Plaintiff, | Before: Donald C. Pogue, Senior Judge |
| v. | |
| UNITED STATES, | Court No. 13-00357 |
| Defendant, | |
| and | |
| SGL CARBON LLC and SUPERIOR GRAPHITE CO., | |
| Defendant-Intervenors. | |

## OPINION

[Action dismissed for failure to exhaust administrative remedies.]

Dated: May 1, 2015

Brian W. Stolarz, LeClairRyan, of Alexandria, VA, and Katherine A. Calogero, Sheppard, Mullin, Richter & Hampton LLP, of Washington, DC, for the Plaintiff.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant.  Also on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director.  Of counsel was Jessica M. Link, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

R. Alan Luberda and Katherine E. Wang, Kelley Drye & Warren LLP, of Washington, DC, for the Defendant-Intervenors.

    **Pogue, Senior Judge**: This action returns to court following redetermination on remand.  Prior to remand, in its initial decision, the U.S. Department of Commerce ("Commerce") determined that Plaintiff, Ceramark Technology, Inc. ("Ceramark"), had circumvented the antidumping duty order on small diameter graphite electrodes ("SDGE") from the People's Republic of China ("PRC").[1]  Ceramark challenged this decision as not in accordance with law and unsupported by a reasonable reading of the record evidence.[2]  The court agreed in part, and remanded, ordering Commerce to consider important aspects of the record that weighed against Commerce's determination. Ceramark, Tech., Inc. v. United States, __ CIT __, 11 F. Supp. 3d 1317, 1323-25 (2014).  During the remand, however, Ceramark did not file comments on Commerce's draft redetermination. Final Results of Redetermination Pursuant to Ct. Remand, ECF Nos. 50-1 (conf. ver.) & 51-1 (pub. ver.) ("Final Redetermination"), at 5.  In

---

[1] [SDGE] From the [PRC], 78 Fed. Reg. 56,864, 56,864-65 (Dep't Commerce Sept. 16, 2013) (affirmative final determination of circumvention of the antidumping duty order and rescission of later-developed merchandise anticircumvention inquiry) ("Final Redetermination"), and accompanying Issues & Decision Memorandum, A-570-929 (Sept. 10, 2013) ("I & D Mem."); see also [SDGE] from the [PRC], 74 Fed. Reg. 8775 (Dep't Commerce Feb. 26, 2009) (antidumping duty order) ("SDGE Order")

[2] Mem. of P. & A. in Supp. of Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF Nos. 24-1 (conf. ver.) & 25-1 (pub. ver.) ("Rule 56.2 Mem.").

that redetermination, Commerce again concluded that Plaintiff

had circumvented the SDGE Order. Id. at 1.  Defendant and

Defendant-Intervenors now seek dismissal for failure to exhaust

administrative remedies.[3]  Plaintiff argues that exhaustion is

not required here because further comment would have been

futile.[4]

       Contrary to Plaintiff's arguments, as explained below,

exhaustion was appropriate, not futile, because Commerce's

remand redetermination involved new factual findings and a re-

weighing of all the record evidence upon which the agency's

decision was based.  Therefore, this action is dismissed for

failure to exhaust administrative remedies.


### BACKGROUND

       This controversy stems from an antidumping duty order

on SDGE from the PRC.  That order covers "all [SDGE] of any

---

[3] See Def.'s Resp. to Pl.'s Comments on the Remand
Redetermination, ECF No. 61, ("Def.'s Resp."), at 4-6; Def.'s
Sur-reply to Pl.'s Remand Comments, ECF Nos. 70 (conf. ver.) &
71 (pub. ver) ("Def.'s Surreply"); Def.-Intervenors' Resp. to
Pl.'s Comments on the Dep't of Commerce's Redetermination, ECF
Nos. 60 (conf. ver.) & 62 (pub. ver.) ("Def.-Intervenors'
Resp."), at 11-12; Surreply Br. of Def.-Intervenor SGL Carbon
LLC & Superior Graphite Co., ECF No. 69 ("Def.-Intervenors'
Surreply").

[4] Pl.'s Reply to Def. & Def.-Intervenors' Resps. to Pl.'s
Comments on the Dep't of Commerce's Remand Redetermination, ECF
Nos. 67 (conf. ver.) & 68 (pub. ver.) ("Pl.'s Reply").

length, whether or not finished, of a kind used in furnaces,
with a nominal or actual diameter of 400 millimeters (16 inches)
or less . . . ." SDGE Order, 74 Fed. Reg. at 8775.[5]
Subsequently, Commerce determined, pursuant to § 781(c) of the
Tariff Act of 1930, as amended, 19 U.S.C. § 1677j(c) (2012),[6]
that 17-inch graphite electrodes constituted a circumventing
minor alteration of the order. Final Determination, 78 Fed. Reg.
at 56,864-65.

        Plaintiff, an importer of 17-inch graphite electrodes,
challenged Commerce's minor alteration determination, Compl.,
ECF No. 9 at ¶2, as not in accordance with law and unsupported
by substantial evidence on the record. Rule 56.2 Mem.,
ECF Nos. 24-1 (conf. ver.) & 25-1 (pub. ver.).  The court agreed
in part and remanded because the agency had not reasonably
considered: (1) the prior commercial availability of 17-inch
graphite electrodes; (2) the importance of diameter as a

---

[5] This scope definition was derived from the petition and is
coextensive with that used by the International Trade Commission
("ITC"). See Ceramark, __ CIT at __, 11 F. Supp. at 1319-20
(citing [SDGE] from the [PRC], 73 Fed. Reg. 8287, 8287 (Dep't
Commerce Feb. 13, 2008) (initiation of antidumping duty
investigation); [SDGE] from the [PRC], 74 Fed. Reg. 2049, 2050
(Dep't Commerce Jan. 14, 2009) (final determination of sales at
less than fair value and affirmative determination of critical
circumstances); [SDGE] from China, USITC Pub. 4062,
Inv. No. 731-TA-1143 (Feb. 2009) at 6, 9-10).

[6] All further citations to the Tariff Act of 1930, as amended,
are to Title 19 of the U.S. Code, 2012 edition.

defining characteristic of graphite electrodes; and (3) the decision made by petitioners, Commerce, and the ITC to exclude 17-inch graphite electrodes from the original antidumping duty order. Ceramark, __ CIT at __, 11 F. Supp. 3d at 1323-25.

On remand, Commerce re-weighed all the record evidence, including the previously unconsidered facts, and found that the evidence emphasized by the court did not so detract from the substantiality of the evidence as to dictate a different outcome.  The agency again found that 17-inch graphite electrodes constituted a circumventing minor alteration. Draft Remand Redetermination, ECF No. 72-1 ("Draft Redetermination"), at 4-9.  Commerce circulated its draft redetermination, requesting comments. See Remand Admin. Rec. Index, ECF No. 52, at 1 (Public Document 2 (letter from Commerce to interested parties setting deadline for comments)).  Plaintiff, despite participating fully in prior administrative and judicial proceedings, did not respond. Final Redetermination, ECF No. 51-1, at 5.[7]  Commerce then filed its final redetermination, substantially the same as the draft, finding "no reason to

---

[7] Defendant (citing to the administrative record), suggests that the Plaintiff's sudden silence may have been the result of some sort of error (on Plaintiff's part) attendant to a change in law firm. See Def.'s Resp., ECF No. 61, at 3-4.  However Plaintiff at no point makes this argument (instead relying solely on the futility exception to the exhaustion doctrine).

alter" its prior circumvention determination. <u>Final</u>
<u>Redetermination</u>, ECF No. 51-1, at 1.

        Defendant and Defendant-Intervenors now seek dismissal
for failure to exhaust administrative remedies. <u>Def.'s Resp.</u>,
ECF No. 61, at 4-6; <u>Def.'s Surreply</u>, ECF No. 71; <u>Def.-</u>
<u>Intervenors' Resp.</u>, ECF No. 62, at 11-12; <u>Def.-Intervenors'</u>
<u>Surreply</u>, ECF No. 69.  In response, Plaintiff argues that
exhaustion of administrative remedies is not required because
the futility exception applies. <u>Pl.'s Reply</u>, ECF No. 68.


                          **DISCUSSION**

<u>I.  Exhaustion of Administrative Remedies</u>

        Plaintiffs, "where appropriate," are required to
exhaust administrative remedies before seeking judicial relief.
28 U.S.C. § 2637(d).  This means that, with limited exception,
"no one is entitled to judicial relief for a supposed or
threatened injury until the prescribed administrative remedy has
been exhausted." <u>Sandvik Steel Co. v. United States</u>, 164 F.3d
596, 599 (Fed. Cir. 1998) (quoting <u>McKart v. United States</u>, 395
U.S. 185, 193 (1969)).

        Here, Ceramark has not exhausted its administrative
remedies because it did not comment on Commerce's draft during
the remand proceeding. <u>Final Redetermination</u>, ECF No. 51-1,

at 5; see also Pl.'s Reply, ECF No. 68, at 1 (arguing that

exhaustion of remedies not appropriate here).

## II.   The Futility Exception

Failure to exhaust is not *per se* fatal to Ceramark's

challenge – exhaustion is a practical, not absolutist, doctrine.

It accommodates exceptions.  Exhaustion is meant to "protect[]

administrative agency authority," McCarthy v. Madigan, 503 U.S.

140, 145 (1992), by "ensur[ing] Commerce has the opportunity to

consider arguments during agency proceedings, and before a judge

intervenes on appeal." Blue Field (Sichuan) Food Indus. Co. v.

United States, ___ CIT ___, 949 F. Supp. 2d 1311, 1322 (2013).[8]

Further, exhaustion "promot[es] judicial efficiency," McCarthy,

503 U.S. at 145, by "promoting development of an agency record

that is adequate for later court review and by giving an agency

a full opportunity to correct errors and thereby narrow or even

eliminate disputes needing judicial resolution," Itochu Bldg.

Products v. United States, 733 F.3d 1140, 1145 (Fed. Cir. 2013)

(citing McCarthy, 503 U.S. at 145-46).  However, "where the

obvious result would be a plain miscarriage of justice,"

---

[8] See United States v. L. A. Tucker Truck Lines, Inc.,
344 U.S. 33, 37 (1952) ("Simple fairness" to the agency and
interested parties "requires as a general rule that courts
should not topple over administrative decisions unless the
administrative body not only has erred but has erred against
objection made at the time appropriate under its practice.")

exhaustion is not required. Hormel v. Helvering, 312 U.S. 552,

558 (1941).  Where exhaustion serves no purpose, when further

comment would be futile — that is, "a useless formality,"

Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d

1370, 1381 (Fed. Cir. 2013) (citation omitted), or involving

"obviously useless motions in order to preserve [parties']

rights," Corus Staal BV v. United States, 502 F.3d 1370, 1379

(Fed. Cir. 2007) (quotation marks and citations omitted) –

exhaustion is not required.

        Ceramark argues that there is "no practical reason to

apply the exhaustion doctrine" here, because further comment on

its part during the remand proceedings would have been futile.

Pl.'s Reply, ECF No. 68, at 10.  Ceramark claims that it had

already repeatedly presented all its arguments to Commerce,

Commerce had repeatedly rejected those arguments, and "there is

nothing in the record or in Commerce's Redetermination to

suggest that Ceramark's arguments would have been considered any

differently had Ceramark presented them again." Id., at 6.

Ceramark considers it "disingenuous for Commerce to urge this

Court to apply the exhaustion doctrine, since Commerce itself

stated that Ceramark's arguments were before the agency on

remand and were, in fact considered and, as usual, rejected."

Id. at 5-6.

It is possible, indeed likely, that if Ceramark had
simply re-submitted its previous comments, Commerce would not
have changed its position.  This is because Commerce was already
considering these same comments on remand, in accordance with
Ceramark, __ CIT at __, 11 F. Supp. 3d at 1323-25. See Draft
Redetermination, ECF No. 72-1, at 5-6, 8-9.  But repetition is
not what the Plaintiff was required to do here.  Rather,
Plaintiff was required to comment on new factual findings, and
the resultant new balance of evidence, that Commerce undertook
specifically for this redetermination.[9]  The best indication of
this is Plaintiff's own comments on the redetermination filed
with this Court, which offered additional, fact-based arguments

---

[9] Compare I & D Mem. cmt. 1 at 11 (reasoning that the prior
existence of a product "does not preclude the Department from
conducting a minor alterations anticircumvention analysis," and
therefore has "no relevance" to the minor alteration inquiry)
(citation omitted) with Final Redetermination, ECF No. 51-1, at
6-8 (finding that, given "the record evidence as a whole," 17
inch graphite electrodes were a circumventing, not alternate,
product, because, while 17 inch graphite electrodes existed
prior to the order, they were not a standard, common product).
Compare I & D Mem. cmt. 1 at 10 (finding that a minor alteration
need not be "insignificant" as long as it meets the requirements
of Commerce's five factor minor alteration test) with Final
Redetermination, ECF No. 51-1, at 9 (finding that neither a one
nor two inch difference in diameter would "represent a
significant difference without more information with regard to
how the electrode is used in comparison to in-scope
merchandise").  As Defendant argues, "Commerce had not made any
of these findings before its draft remand results.  Ceramark did
not — and could not – have presented any arguments challenging
these findings before those results were released." Def.'s
Surreply, ECF No. 71, at 3 (emphasis original).

tailored to the remand.[10]  While Commerce still might not have

agreed with Ceramark's arguments on remand, the "mere fact that

an adverse decision may have been likely does not excuse a party

from a statutory or regulatory requirement that it exhaust

administrative remedies." Corus Staal, 502 F.3d at 1379.[11]

---

[10] Compare Pl.'s Comments on the Dep't of Commerce's
Redetermination, ECF Nos. 54 (conf. ver.) & 55 (pub. ver.)
("Pl.'s Comments"), at 2-5 (arguing that, in the
redetermination, Commerce's commercial availability analysis was
flawed because it "erroneously conflated ['standard product' and
'commercial availability']," focusing too much on "standard
product" (production volume) rather than "commercial
availability" (presence, as an alternative product, on the
market)), with Rule 56.2 Mem., ECF No. 25-1, at 14 (arguing that
Commerce's complete "disregard of the commercial availability of
the 17-inch diameter [graphite electrodes] prior to the
investigation was erroneous"); Pl.'s Reply to Def.'s Resp. to
Pl.'s Mot. for J. on the Agency R., ECF No. 45, at 6-7 (same),
and Ceramark Initial Questionnaire Resp., A-570-929
Anticircumvention Inquiry (Aug. 3 2012), reproduced in Pub. App.
to Mem. of P. & A. in Supp. of Pl.'s Rule 56.2 Mot. for J. on
the Agency R. ("Pub. App. to Rule 56.2 Mem."), ECF Nos. 28-2
(pub. ver.) & 29-2 (conf. ver.) at Tab 2, at 1-3, 12-13 (arguing
that 17 inches graphite electrodes are a standard product),
Ceramark's 1st Supp. Questionnaire Resp., A-570-929
Anticircumvention Inquiry (Oct. 17, 2012), reproduced in Pub.
App. to Rule 56.2 Mem., ECF Nos. 28-7 (pub. ver.) & 29-7 (conf.
ver.) at Tab 7, at 1-2, 6-7 (same); Ceramark's 2d Supp.
Questionnaire Resp., A-570-929 Anticircumvention Inquiry
(Nov. 30, 2012), reproduced in Pub. App. to Rule 56.2 Mem., ECF
Nos. 28-8 (pub. ver.) & 29-8 (conf. ver.) at Tab 8, 1, 5-6, 8-9
(same).

[11] See, e.g., Xinjiamei Furniture (Zhangzhou) Co. v. United
States, __ CIT __, 968 F. Supp. 2d 1255, 1266 (2014) (Exhaustion
is futile when a party "has already fully presented its
arguments to [Commerce] in some form and had those arguments
rejected, but not where it declines to present the arguments at
all because it believes the agency will be unlikely to accept
them."); Pakfood Pub. Co. v. United States, __ CIT __, 724 F.

(footnote continued)

Providing comments on remand would have, at the very least,

provided "the agency an opportunity to set forth its position in

a manner that would facilitate judicial review." Id. at 1380.[12]

Certainly the court's review would have benefited had Commerce

had the opportunity to consider whether its new factual

findings, reconsideration, and resultant redetermination were

based on a reasonable reading of the entire record.

---

Supp. 2d 1327, 1351 (2010) (Exhaustion may be futile when "an
agency has articulated a very clear position on the issue which
it has demonstrated it would be unwilling to reconsider," but
only if "the agency's commitment to its position [is] so strong
as to render requiring a party to raise the issue with the
agency inequitable and an insistence of a useless formality.")
(internal quotation marks and citations omitted).

[12] Ceramark argues that any comment at all would have been futile
because the agency exhibited an "unwillingness to change its
position," Pl.'s Reply, ECF No. 68, at 9, akin to that seen in
Itochu, where "there was no reasonable prospect that Commerce
would have changed its position . . . [because] Commerce's
apparent position," as defended in a concurrent case, "made such
comments legally immaterial." 733 F.3d at 1147; see Pl.'s Reply,
ECF No. 68, at 6-7.  But that is not the case here, where
Commerce was presented with a factual question – an issue of
substantial evidence.  While, as in Itochu, Commerce was
defending a similar position in a concurrent case, Deacero
S.A.P.I. de C.V. v. United States, CIT Ct. No. 12-00345, because
both Ceramark and Deacero presented unique questions of fact,
any decision or disposition in one did not make comments
immaterial in the other.  Rather, that Commerce had been
instructed to consider Ceramark's prior arguments on remand
suggests that Commerce "might have been receptive to [further]
counter-arguments" on fact-specific questions related to those
arguments. See Mittal Steel Point Lisas Ltd. v. United States,
548 F.3d 1375, 1384 (Fed. Cir. 2008).

## CONCLUSION

Because Ceramark did not provide comments to Commerce during remand proceedings, Ceramark did not exhaust its administrative remedies.  Because filing comments would not have been a useless formality, the futility exception does not apply. Accordingly, this action is dismissed for failure to exhaust administrative remedies.

IT IS SO ORDERED.

/s/ Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: May  1, 2015
       New York, NY